IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Ernest A. Larch, ) | C.A. No. 8:04-1962-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| George Gintoli; Russell Hughes; ) | |
| Brenda Young-Rice, in their Personal ) | |
| Capacities; and South Carolina Department ) | |
| of Mental Health, for injunctive relief, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Defendants' motion to dismiss Plaintiff's *pro se* amended complaint.[1] Plaintiff, who is currently in the custody of the South Carolina Department of Mental Health (DMH) pursuant to provisions of the South Carolina Sexually Violent Predator Act ("SVPA" or "the Act"),[2] asserts Defendants violated 42 U.S.C. § 1983 by failing to provide him access to a law library and through other actions and inactions which interfered with his constitutional right of access to the courts.[3] Specifically, Plaintiff alleges he was prejudiced in the pursuit of a state court action, *Smith, et al. v. Montgomery, et al.*, South Carolina Court of Common Pleas No. 01-CP-40-2975, due to Defendants' denial of access to a law library, failure to provide a notary, failure to

---

[1]Plaintiff originally joined with ten other plaintiffs in filing one civil action. *See Kennedy, et al. v. Gintoli, et al.*, D.S.C. C/A 8:04-1776-22. This court directed that the single action be refiled as eleven separate actions.

[2]The SVPA allows the civil commitment of persons determined to be Sexually Violent Predators ("SVPs") beyond the completion of their criminal sentence.

[3]Plaintiff originally asserted claims only under 42 U.S.C. § 1985. He later indicated an intent to pursue his claims under 42 U.S.C. § 1983. By order filed May 31, 2005, this court directed this case be recommitted to the Magistrate Judge for consideration of Plaintiff's claims pursuant to 42 U.S.C. § 1983.

provide "enough" paper to file briefs and memoranda,[4] failure to pay for copies, and failure to provide sufficiently frequent legal mail delivery.[5] Plaintiff has abandoned the last of these claims.

On June 27, 2005, Defendants filed the present motion to dismiss. Through this motion, Defendants argue that Plaintiff has not alleged an injury sufficient to meet the standing requirement enunciated in *Lewis v. Casey*, 518 U.S. 343 (1996). The individual Defendants also assert that they are entitled to qualified immunity. Defendants, therefore, assert that this action should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff responded to this motion on July 7, 2005.

### Procedural Background

In accordance with the court's order of reference, 28 U.S.C. § 636(b), and Local Rule 73.02 (B)(2)(b) and (e), DSC, this matter was referred to United States Magistrate Judge Bruce H. Hendricks for pre-trial proceedings and a Report and Recommendation. On October 17, 2005, the Magistrate Judge issued a Report recommending Defendants' Motion to Dismiss be granted as to the individual Defendants based upon qualified immunity. The Magistrate Judge also recommended the motion be denied as to Defendant DMH because Plaintiff had made a sufficient showing of injury to overcome Defendant DMH's motion to dismiss. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. Defendant DMH filed objections on October 20, 2005. Plaintiff filed objections on October 25, 2005.

### STANDARDS OF REVIEW

---

[4] Plaintiff alleges he is limited to twenty-five (25) sheets of paper a month.

[5] This claim challenged the adequacy of thrice-weekly legal mail deliveries.

**Review of Report and Recommendation.** The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (internal quotation and citation omitted).

**Motion to Dismiss.** A complaint must not be dismissed for failure to state a claim "unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[6] *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "Moreover, when such a dismissal involves a civil rights complaint, '[a court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears

---

[6] Because Defendants moved for dismissal after filing an answer, the 12(b)(6) motion is construed as "a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted). The standard of review for a 12(b)(6) and 12(c) motion are, however, the same. *Id*. at 243-44. *See also Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under [Rule 12(c)] tests the sufficiency of a [claim], it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

3

to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988)). *See also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (same).

*Pro se* **Petitions.** *Pro se* petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). However, the requirement of liberal construction does not mean that a court may ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dept. of Soc. Svcs.*, 901 F.2d 387 (4th Cir. 1990).

**Consideration of Materials Beyond Pleadings.** Defendants attach copies of two exhibits to their motion. The first is a copy of the "Return and Memorandum of Law by the Plaintiffs as to Why This Action Cannot be Dismissed on Motion by the Defendants." This is a document which Plaintiff and others filed in the state court action which Plaintiff complains was resolved adversely to him because of his lack of access to legal resources. Defendants' other exhibit is a copy of the order (and judgment) filed in the state court action.

Normally, when a court considers material outside the record of a case, a motion to dismiss is converted to a motion for summary judgment under Fed. R. Civ. P. 56, and "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed.

R. Civ. P. 12(b); *see Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985). However, because the exhibits attached to Defendants' motion are documents from the public record of the state court action at issue, and because Plaintiff bases his action in this court on this dismissal, the court "may consider [a document attached to a motion to dismiss] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] Plaintiff[] do[es] not challenge its authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). *See also Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986) (court can take note of items in public record in considering dismissal under 12(b)(6)). Therefore, dismissal is considered under the standard of Rule 12(b)(6).

## ARGUMENTS OF THE PARTIES

As noted above, Plaintiff's claimed injury was the dismissal of his state court action which challenged the conditions, but not the fact, of his confinement. Plaintiff maintains that this dismissal occurred due to Defendants' failure to provide Plaintiff with access to a law library and other resources necessary to pursue the state court action. Plaintiff asserts that this dismissal is an "actual injury" warranting injunctive relief.

Defendants argue first that sexually violent predators (SVPs) do not have a constitutional right of access to the courts.[7] Alternatively, Defendants argue that even if such a constitutional right

---

[7]Defendants' initial motion to dismiss, filed September 13, 2004, indicates that an affirmative duty on the part of the state does not exist "to provide mental patients with either a law library or persons trained in the law to aid the mental patient with the filing of civil actions." Motion to Dismiss at 6, filed Sept. 13, 2004. Defendants' renewed motion, however, seems to concede that the class of individuals such as Plaintiff have a right of access to the courts, just not a free-standing constitutional right of access to a law library. *See* Memorandum of Law in Support of Motion at 6, filed June 27, 2005 ("Where [Plaintiff has been] afforded [his] right of access to the courts, the Court is without authority to adjudicate an abstract complaint about the access to a law library.") However, in Defendant DMH's Objections to the Report and Recommendation, DMH specifically does not concede that SVPs have a right of access to the *courts*. *See* Defendant DMH's Objections to the

5

is clearly established, Plaintiff was not denied access to the courts because he was able to make filings and appear in the underlying state court action. Defendant DMH argues, in addition, that Plaintiff is provided counsel "for hearings related to [his] commitment" under the SVPA, and that this representation suffices to meet the *Bounds* requirement, as modified by *Casey*, of court access through legal assistance. This, however, would not apply to those instances, such as this one, where Plaintiff might seek access to the court for alleged violations related to conditions of confinement *not* tied to the commitment process.

Plaintiff responds that staff in the SVP unit have stated that the "inmates have no rights at all [and] the staff does not have to obey any law and that no court can order them to do anything." Plaintiff's Response to Defendants' Motion to Dismiss at 4, filed July 7, 2005. Plaintiff also asserts Defendants' actions prevented Plaintiff "from bringing forth a meaningful action that would have stood the test in [the state] court." *Id*. at 6. Plaintiff has also submitted an affidavit[8] averring that his state court legal memoranda had to be shortened due to restrictions on the amount of paper an individual is entitled to have during one month and that he was not provided the ability to adequately research his case. Affidavit of Ernest Larch at 2, filed July 7, 2005. Plaintiff maintains that both limitations prejudiced him in advancing the state court action.

## DISCUSSION

After reviewing the record of this matter, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court declines to adopt the ultimate conclusion of the

---

Report and Recommendation at 1, filed Oct. 20, 2005.

[8]The affidavit is unnotarized, but one of Plaintiff's contentions is that there is no notary available to the SVPs.

Magistrate Judge's Report and Recommendation. The court determines, instead, that because Plaintiff cannot show actual injury, this case must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**Plaintiff's right of access.** This case presents questions arising at the intersection between the rights afforded those inmates either convicted of a criminal offense or awaiting trial on criminal charges, and the limited class of individuals involuntarily civilly committed to the custody of the DMH under the SVPA, S.C. Code Ann. §§ 44-48-10, *et seq*. The Act under which Plaintiff is committed was passed in 1998 in response to concerns that "a mentally abnormal and extremely dangerous group of sexually violent predators exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment." S.C. Code Ann. § 44-48-20. The Act, modeled after a similar Kansas act which passed constitutional muster in *Kansas v. Hendricks*, 521 U.S. 346 (1997), provides a procedure for South Carolina's retention and control of individuals reaching the end of a criminal sentence for conviction of a sexually violent offense.[9] During the course of these civil commitment proceedings, the Act provides for a jury trial, *see* S.C. Code. Ann. §44-48-90, a heightened standard of proof, *see* S.C. Code Ann. §44-48-100(A) ("[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator"), as well as various other procedural safeguards analogous to those available for criminal defendants.[10]

---

[9]This includes those individuals who are confined in the South Carolina Department of Corrections or the Department of Juvenile Justice, or, in some instances, under the supervision of the South Carolina Department of Probation, Parole and Pardon Services. *See* S.C. Code Ann. § 44-48-30(5).

[10]Defendants cite a recent South Carolina Supreme Court decision regarding the Act's civil commitment process for the proposition that "civil commitment as a sexually violent predator is not dependent upon their [sic] previous conviction for a sexually violent offense." Memorandum at 8,

7

As this court noted in its earlier order in this matter, there is some question whether Defendants' delineation of Plaintiff's rights as equivalent to those of a "mental patient" is an accurate characterization of the rights to which Plaintiff is entitled. *See* Order filed May 31, 2005, Dkt No. 22.  This is, in part, because persons committed under the SVPA are excluded from the definition of mental health "patient." *See* S.C. Code Ann. § 44-22-10(11).

Due process and equal protection require that prisoners–both convicted and pre-trial detainees–have access to the courts to pursue direct criminal appeals, file habeas petitions, or to file civil rights actions "to vindicate 'basic constitutional rights.'" *Casey*, 518 U.S. at 354 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). Plaintiff's confinement status is neither that of a criminal inmate nor a pretrial detainee. Yet it can hardly be said Plaintiff has no right of access to the courts.

As the Ninth Circuit held in *Cornett v. Donovan*, "[t]he right of access helps ensure that the unlawfully detained obtain their freedom . . . and that the lawfully detained have recourse for violation of fundamental constitutional rights. . . . These concerns are adequately addressed only if the right of access is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness." *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).[11]

---

filed June 27, 2005 (citing *Page v. State*, 615 S.E.2d 740 (2005)). While it is true that commitment under the Act requires a separate finding during a civil proceeding that is in no way connected to the underlying criminal conviction, it is also true that a prerequisite for consideration of commitment under the Act is conviction of a sexually violent offense. *See* S.C. Code Ann. § 44-48-40(A) ("When a person has been convicted of a sexually violent offense . . . .").

[11]Additionally, Plaintiff's circumstance is analogous enough to that of a criminal defendant to warrant parallel treatment regarding his right of access to the courts. Indeed, both Plaintiff and Defendants assume such, as they both argue the application–or not–of *Bounds v. Smith*, 430 U.S. 817 (1978), and *Casey*.

In *Bounds v. Smith*, 430 U.S. 817 (1978), the Supreme Court defined access to the courts for prisoners as "meaningful access." *Bounds*, 430 U.S. at 830.[12] This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. However, the *Casey* decision, issued in 1996, indicated that "*Bounds* established no such right . . . . The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." *Casey*, 518 U.S. at 350. The *Casey* decision distanced itself from the more expansive *Bounds* decision, finding that *Bounds* "appear[s] to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them." *Casey*, 518 U.S. at 343. The *Casey* court went on:

> In other words, *Bounds* does not guarantee inmates the wherewithall to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id*. at 355. The "touchstone," according to *Casey*, is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id*. at 356.

---

[12]As noted by the Supreme Court, the right of access to the courts has been found to exist in many areas of the Constitution. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that "[d]ecisions of this Court have grounded the right of access in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses") (internal citations omitted).

As a fundamental tenet associated with our basic concepts of ordered liberty, an individual whose liberty is constrained against his will, whether he be a mental patient, a criminally-convicted inmate, a pre-trial detainee, or an individual civilly committed through an SVP act, has a constitutional right of access to the courts to challenge the fact or conditions of his confinement. The court, therefore, finds that Plaintiff is entitled, under the Constitution, to access to the courts to challenge the fact or conditions of his confinement.

**Constitutional Injury.** While the court concludes that Plaintiff is entitled to a right to access, this is not the end of the inquiry. Plaintiff must also plead (and ultimately establish) that he suffered an actual injury.

It is readily apparent from the documents properly considered, however, that Plaintiff cannot meet the actual injury requirement of *Casey* so as to allow this case to go forward.[13] Plaintiff's state court action was dismissed because, *inter alia*, there was no expert testimony in the record to establish "that the practices and procedures utilized by the Department of Mental Health and its employees at the [SVP unit] 'substantially depart' from the accepted standards in that field." Order of The Honorable Alison Renee Lee at 6, filed as Exhibit B to Defendants' Motion to Dismiss, filed June 27, 2005.

Plaintiff argues that had he had access to a law library, he would have been able to research and discover the inadequacies of his state court complaint. *See* Response to Motion to Dismiss at 2, 3, filed July 7, 2005. However, this assertion does nothing to overcome the failure of proof in Plaintiff's state court case found by the state court judge. Plaintiff's state court action was dismissed

---

[13] As discussed above, the court has considered the pleadings and the state court records of which it may take judicial notice. *See supra* at 4-5.

on its merits, not because Plaintiff was denied access to the courts. Plaintiff has accordingly failed to assert an "actual injury" sufficient to provide him standing in this matter.

## CONCLUSION

The court finds dismissal of Plaintiff's claims to be appropriate. While this court finds individuals committed to the custody of the Department of Mental Health under the SVPA have a constitutional right of access to the courts to challenge the fact, or conditions, of their confinement, the court determines Plaintiff's failure to show an "actual injury" in this case is fatal. Accordingly, Defendants' motion to dismiss is **granted** and this case is dismissed with prejudice.[14]

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 31, 2006

---

[14] Because this court finds Plaintiff has not established actual injury, it is not necessary to reach the issue of qualified immunity.